## IV.

575 S.E.2d 148

**STATE ex rel. Sharon ORLOFSKE, Individually and all Those Similarly Situated; Local 12 of the International Association of Firefighters; and Lodge 38 of the Fraternal Order of Police, Petitioners Below, Appellees,**

v.

**The CITY OF WHEELING, a Municipal Corporation, Respondent Below, Appellant.**

No. 30456.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 18, 2002.

Decided Nov. 8, 2002.

---

12 of the International Association of Firefighters; and Lodge 38 of the Fraternal Order of Police, appellees/petitioners below, a writ of mandamus. By so ordering, the circuit court compelled the City to accept from Ms. Orlofske premiums for continued coverage under the City's health insurance benefits plan for her lifetime. The City objects and asserts that its duty to accept such premiums is limited by federal and state law to a maximum of thirty-six months. Having reviewed the briefs, heard the arguments of counsel and analyzed the pertinent authorities, we affirm the circuit court's ruling.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The City offers its retiring employees the option of continuing to participate in the City's health care insurance plan. Retired employees may continue to receive health insurance by paying the entire health insurance premium. The City has been providing this coverage since 1985.

Scott Orlofske was a retired firefighter for the City. After retiring and before his death, Mr. Orlofske and his wife, Ms. Orlofske, had full family health insurance coverage provided under the City's group health benefits plan. Mr. and Ms. Orlofske had elected to retain health insurance through the City and paid the entire premium for their coverage. On July 26, 1998, Mr. Orlofske died. The City then mailed a letter to Ms. Orlofske, dated July 30, 1998, notifying her that if she elected to continue health care insurance coverage under the City's group insurance plan, such coverage would be governed by the provisions of the Federal Consolidated Omnibus Budget Reconciliation Act (COBRA) of 1985. In particular, the City informed Ms. Orlofske that if she elected to continue coverage, it would last only thirty-six months.

On April 19, 2000, Ms. Orlofske filed a petition for a writ of mandamus in the Circuit Court of Ohio County demanding that the City accept her tendered premiums for health insurance coverage without temporal limitation under the provisions of W. Va.

Rosemary J. Humway–Warmuth, Esq., City Solicitor, Wheeling, West Virginia, Attorney for the Appellant.

Jolyon W. McCamic, Esq., McCamic & McCamic, Wheeling, West Virginia, Attorney for the Appellees.

DAVIS, Chief Justice:

The City of Wheeling, appellant/respondent below (hereinafter "the City"), appeals a decision of the Circuit Court of Ohio County granting Sharon Orlofske (hereinafter "Ms. Orlofske"); others similarly situated; Local

Code § 8–12–8 (1986) (Repl.Vol.1998).[1] Thereafter, on April 25, 2000, the circuit court issued a rule to show cause. The City answered the petition on May 12, 2000.[2]

In its response, the City asserted that federal law preempted W. Va.Code § 8–12–8 and thus limited the City's obligation to provide continuing health insurance coverage to only thirty-six months. Additionally, the City contended that the applicable state law should be read as embodying federal law; that mandamus was not an available remedy; and that the circuit court lacked subject matter jurisdiction. The Circuit Court of Ohio County granted Ms. Orlofske the requested mandamus relief on May 15, 2001. From this ruling, the City appeals.

## II.

### STANDARD OF REVIEW

The issues raised by the City in this appeal are subject to our plenary review. We typically review *de novo* a circuit court's decision to grant mandamus relief. In this regard, we previously have held that "[t]he standard of appellate review of a circuit court's order granting relief through the extraordinary writ of mandamus is *de novo*." Syl. pt. 1, *Staten v. Dean,* 195 W.Va. 57, 464 S.E.2d 576 (1995). *Accord* Syl. pt. 1, *Rollyson v. Jordan,* 205 W.Va. 368, 518 S.E.2d 372 (1999).

Furthermore, we specifically have been asked to determine whether the circuit court possessed subject matter jurisdiction in this case. "Whether a court has subject matter jurisdiction over an issue is a question of law." *Snider v. Snider,* 209 W.Va. 771, 777, 551 S.E.2d 693, 699 (2001). Thus, we also review anew the circuit court's ruling on this point. "Where the issue on an appeal from the circuit court is clearly a question of law

... we apply a *de novo* standard of review." Syl. pt. 1, in part, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995). Having identified the standards governing our review, we turn now to our decision of this appeal.

## III.

### DISCUSSION

Below, Ms. Orlofske successfully asserted that her claims were resolved by W. Va.Code § 8–12–8, which authorizes municipalities to provide health insurance coverage to certain enumerated individuals, including spouses and dependents of any deceased retirees who continued to receive health insurance through the City. Spouses and dependents of a deceased retiree may retain insurance through the City by paying the entire premium for that coverage. The City claims here, as before the trial court, that W. Va.Code § 8–12–8 is preempted by federal law or, alternatively, that this section should be read as embodying federal law. Consequently, we begin by briefly reviewing the federal law relied upon by the City.

On April 7, 1986, Congress enacted the Consolidated Budget Reconciliation Act of 1985 (hereinafter "COBRA"), Pub.L. No. 99–272, 100 Stat. 82, which, among other things, amended the Employee Retirement Income Security Act (hereinafter "ERISA")[3] and the Public Health Service Act (hereinafter the "PHSA")[4] to include virtually identical continuation and notification provisions regarding health insurance coverage. Under these provisions, health plan sponsors must provide to each qualified beneficiary who would lose coverage due to a "qualifying event"[5] notification that he/she may continue to elect to receive coverage. The maximum required

---

1. For the text of W. Va.Code § 8–12–8 (1986) (Repl.Vol.1998), see section III.B.1, *infra.*

2. The City did not object below nor in this appeal regarding the filing of a petition for a writ of mandamus rather than a complaint as required by Rule 71B of the West Virginia Rules of Civil Procedure. *See Tiernan v. Charleston Area Med. Ctr., Inc.,* 203 W.Va. 135, 140 n. 10, 506 S.E.2d 578, 583 n. 10 (1998) ("Issues not raised on appeal ... are deemed waived.")

3. *See* 29 U.S.C. §§ 1161–69 (2000) (codifying ERISA's continuing coverage provisions).

4. *See* 42 U.S.C. §§ 300bb–1 to –8 (2000) (codifying the PHSA's continuing coverage provisions).

5. *See infra* note 8.

time for such coverage under these provisions is thirty-six months. ERISA does not cover "governmental plan[s]." [6] 29 U.S.C. § 1003(b)(1) (2000). Thus, state and municipal governments are required to provide COBRA continuation coverage only under the PHSA.

With this basic foundation provided, we proceed to discuss the issues raised by the parties. We begin by addressing the threshold question of the circuit court's subject matter jurisdiction.

### A. State Court Subject Matter Jurisdiction over Federal Preemption Defenses

■ The City asserts that the circuit court lacked subject matter jurisdiction because this case implicates claims of federal preemption. However, the City has provided no authority to support its contention that only federal courts have jurisdiction to rule on preemption defenses. *See Turnbow v. Pacific Mut. Life Ins. Co.*, 934 F.2d 1100, 1103 (9th Cir.1991) ("Pacific Mutual has cited no authority to support the proposition that only federal courts have jurisdiction to rule on ERISA preemption."). We, too, have been unable to substantiate this claim.

■ Under the dual system of sovereignty established by the United States Constitution, state courts are presumed to enjoy concurrent jurisdiction with federal courts over federal questions. *E.g., Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 823, 110 S.Ct. 1566, 1568, 108 L.Ed.2d 834, 839 (1990). Because state and federal courts share jurisdiction over federal claims, "when a state proceeding presents a federal issue, even a pre-emption issue, the proper course is to seek resolution of that issue by the state court." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 149–50, 108 S.Ct. 1684, 1691, 100 L.Ed.2d 127, 138 (1988). *See also Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398 n. 13, 107 S.Ct. 2425, 2433 n. 13, 96 L.Ed.2d

318, 331 n. 13 (1987) (recognizing that preemption claims would have to "be addressed in the first instance by the state court in which respondents filed their claims."). Thus, we agree that "[s]tate courts are perfectly competent to evaluate federal preemption defenses[,]" *Doyle v. Blue Cross Blue Shield*, 149 F.Supp.2d 427, 434 (N.D.Ill. 2001),[7] and hold that West Virginia state courts have subject matter jurisdiction over federal preemption defenses.

### B.W. Va.Code § 8–12–8

■ 1. W. Va.Code § 8–12–8 is not preempted by federal law. "We are mindful that the Congress or a federal agency acting within the scope of its congressionally delegated authority has the power to preempt state regulation pursuant to the Supremacy Clause of article VI of the *U.S. Const.*" *Casey v. Public Serv. Comm'n*, 193 W.Va. 606, 609, 457 S.E.2d 543, 546 (1995) (footnote omitted). However, "[c]onsideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law." *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576, 595 (1981). "[P]reemption is disfavored in the absence of convincing evidence warranting its application ...." *Hartley Marine Corp. v. Mierke*, 196 W.Va. 669, 673, 474 S.E.2d 599, 603 (1996).

■ We reject the City's claim that the COBRA amendments that were substantially identical to both ERISA and PHSA on the issue of continuing coverage somehow imported ERISA preemption into the PHSA. "It is clear ... that under 29 U.S.C. § 1003(b)(1), none of the ERISA provisions applies to a government employee benefits plan." *Williams v. New Castle County*, 970 F.2d 1260, 1265 (3d Cir.1992). In essence, "[n]otwithstanding ERISA's clear exclusion of governmental plans, 29 U.S.C.

---

**6.** ERISA defines a "government plan" to mean, *inter alia*, "a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 29 U.S.C. § 1002(32) (2000).

**7.** *See also Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 339 (5th Cir.1999); *Goepel v. National Postal Mail Handlers Union*, 36 F.3d 306, 316 (3d Cir.1994); *CSXT, Inc. v. Pitz*, 883 F.2d 468, 472 (6th Cir.1989); *Lucia v. Teledyne Cont'l Motors*, 173 F.Supp.2d 1253, 1263 (S.D.Ala. 2001).

§§ 1003(b)(1) & 1002(32), [the City] urges the court to ignore the statute and apply ERISA to [t]his case." *Mansfield v. Chicago Park Dist. Group Plan*, 946 F.Supp. 586, 591 (N.D.Ill.1996). The City's reliance on ERISA preemption is misplaced. ERISA simply does not apply to municipal, or state, government plans. If preemption is to be found, it must be found in the federal statute applicable to municipal governments—the PHSA.

■ Federal preemption of state law is either express—if the federal statute contains an express statement preempting state law—or implied—if compliance with state and federal law is a physical impossibility or state law frustrates the purpose of the federal law. *Hartley Marine*, 196 W.Va. at 674, 474 S.E.2d at 604. The PHSA does not contain an express preemption provision. *See Bigelow v. United Healthcare of Mississippi*, 220 F.3d 339, 344 n. 8 (5th Cir.2000) ("We are not aware of any preemption provision in the PHSA like the express, total preemption provision of ERISA."). In fact, none of the eight sections comprising the PHSA contain words of exclusivity. Furthermore, the House of Representatives and Senate Reports dealing with the PHSA's continuing coverage provisions are silent on preemption. *Radici v. Associated Ins. Cos.*, 217 F.3d 737, 742 (9th Cir.2000). Since the PHSA does not expressly preempt state law, we next turn to the question of implied preemption.

Construing this language in conjunction with the governing federal law, we find there is no conflict between the provisions of W. Va.Code § 8–12–8 and the goal of continuing health insurance coverage for government employees the PHSA seeks to accomplish. The PHSA provides, in pertinent part, that continuation coverage "must extend for at least the period beginning on the date of the qualifying event[8] and ending not earlier than [a maximum of thirty-six months later]." 42 U.S.C. § 300bb–2(2) (2000) (footnote added). Nothing in the PHSA suggests that a state cannot be more beneficent than the PHSA requires, as long as the state is not less generous than the PHSA mandates. Because W. Va.Code § 8–12–8 provides lifetime coverage for retirees' survivors or dependents, it most certainly provides coverage for the requisite period of thirty-six months.

W. Va.Code § 8–12–8 (1986) (Repl.Vol. 1998) provides:

Every municipality shall have plenary power and authority to negotiate for, secure and adopt for the regular employees thereof(other than provisional, temporary, emergency and intermittent employees) who are in employee status with such municipality on and after the effective date of this section and for their spouses and dependents, a policy or policies of group insurance written by a carrier or carriers chartered under the laws of any state and duly licensed to do business in this state and covering life; health; hospital care; surgical or medical diagnosis, care and treatment; drugs and medicines; remedial care; other medical supplies and services; or any other combination of these; and any other policy or policies of group insurance which in the discretion of the governing body bear a reasonable relationship to the foregoing coverages. The provisions and terms of any such group plan or plans of insurance shall be approved in writing by the insurance commissioner of this state as to form, rate and benefits.

The municipality is hereby authorized and empowered to pay the entire premium cost, or any portion thereof, of said group

---

8. A "qualifying event" means
with respect to any covered employee, any of the following events which, but for the continuation coverage required under this subchapter, would result in the loss of coverage of a qualified beneficiary:
(1) The death of the covered employee.
(2) The termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment.

(3) The divorce or legal separation of the covered employee from the employee's spouse.
(4) The covered employee becoming entitled to benefits under title XVIII of the Social Security Act [42 U.S.C. 1395 et seq.].
(5) A dependent child ceasing to be a dependent child under the generally applicable requirements of the plan.
42 U.S.C. § 300bb–3.

policy or policies. Whenever the above-described regular employees shall indicate in writing that they have subscribed to any of the aforesaid insurance plans on a group basis and the entire cost thereof is not paid by the municipality, the municipality is hereby authorized and empowered to make periodic premium deductions of the amount of the contribution each such subscribing employee is required to make for such participation from the salary or wage payments due each such subscribing employee as specified in a written assignment furnished to the municipality by each such subscribing employee.

When a participating employee shall retire from his employment, he may, if he so elects, remain a member of the group plan and retain coverage for his spouse and dependents, by paying the entire premium for the coverage involved. Spouses and dependents of any deceased member may remain a member of the group plan by paying the entire premium for the coverage: Provided, That nothing herein shall be construed as prohibiting the municipality from paying a portion or all of the cost of any coverage. In the event that a municipality changes insurance carriers, as a condition precedent to any such change, the municipality shall assure that all retirees, their spouses and dependents, and the spouses and dependents of any deceased member are guaranteed acceptance, at the same cost for the same coverage as regular employees of similar age groupings, their spouses and dependents.

Furthermore, the PHSA's legislative history supports our reading of this statutory language. The House of Representative's Report on the COBRA continuing coverage amendments addressed a "special rule" rendering liable persons other than employers, if such persons fail to comply with an employer's request for action:

> When an employer changes from one insurance company to another, State law often imposes similar requirements on the new insurance company to continue to provide coverage to the employer's existing insures. *As is the case generally with respect to the health care ' continuation rules,* these State laws are not affected by the special rule described above. The special rule and the State laws are to apply concurrently so that in any specific instance, the more extensive requirements will apply. Thus, for example, *if under State law the qualified beneficiaries are entitled in one respect to greater rights than under the health care continuation rules such that compliance with State law automatically means compliance with the health care continuation rules, the State law rule becomes the operative rule with respect to that aspect.*

H.R.Rep. No. 101–247, at 59, *reprinted in* 1989 U.S.C.C.A.N. 1096, 1951 (emphasis added).

 Thus, it is evident that a state law that is more generous than the PHSA is not preempted. As one court has similarly recognized, "[i]n the passage emphasized ..., the House report states that the 'general' approach of the continuation coverage provisions would not preempt state lawmaking efforts." *Radici v. Associated Ins. Cos.,* 217 F.3d 737, 744 (9th Cir.2000).[9] Therefore, the provision in W. Va.Code § 8–12–8 of lifetime coverage clearly requires coverage "for at least" the period required by PHSA, which ends "not earlier than" thirty-six months later. Consequently, we hold that the continuation of health insurance coverage provisions of the Public Health Service Act, 42 U.S.C. §§ 300bb–1 to –8 (2000), do not preempt W. Va.Code § 8–12–8 (1986) (Repl.Vol.1998).[10]

9. H.R.Rep. No. 101–247 does contain a preemption savings clause paragraph at the conclusion of the portion of the report we have cited. We agree with the Ninth Circuit in that the preemption saving paragraph "bows only to ERISA's strong express preemption provision [and] ... should not be analogized to the PHSA, which lacks a 'broad Federal preemption' provision." ' *Radici,* 217 F.3d at 744.

10. We are buttressed in our conclusion that the PHSA does not preempt W. Va.Code § 8–12–8 as the only case the City cites in support of its position is *Moran v. Peralta Community College District,* 825 F.Supp. 891 (N.D.Cal.1993), which the Ninth Circuit in *Radici* found "unpersuasive" because counsel in *Moran* conceded that PHSA had the same preemptive force as ERISA, and the district court did not analyze the "bevy of

2. **W. Va.Code § 8–12–8 does not limit continuing insurance coverage.** Because we find that W. Va.Code § 8–12–8 is not preempted by federal law, we must examine its provisions to determine if they impose a temporal limit on continuing health insurance coverage. W. Va.Code § 8–12–8 provides, in pertinent part:

> Spouses and dependents of any deceased member may remain a member of the group plan by paying the entire premium for the coverage: Provided, That nothing herein shall be construed as prohibiting the municipality from paying a portion or all of the cost of any coverage. In the event that a municipality changes insurance carriers, as a condition precedent to any such change, the municipality shall assure that all retirees, their spouses and dependents, and the spouses and dependents of any deceased member are guaranteed acceptance, at the same cost for the same coverage as regular employees of similar age groupings, their spouses and dependents.

We have long held, " ' "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syllabus point 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951).' Syllabus point 1, *State v. Jarvis*, 199 W.Va. 635, 487 S.E.2d 293 (1997)." Syl. pt. 4, *Daily Gazette Co. v. West Virginia Dev. Office*, 206 W.Va. 51, 521 S.E.2d 543 (1999). There is no language in W. Va.Code § 8–12–8 that creates any temporal limitation on the City's duty to provide insurance to the spouses or dependents of deceased members who choose to continue coverage. Likewise, this Court is not authorized to read such language into the statute. *See State ex rel. Frazier v. Meadows*, 193 W.Va. 20, 24, 454 S.E.2d 65, 69 (1994) ("Courts are not free to read into the lan-

guage what is not there, but rather should apply the statute as written.").[11]

The City posits, however, that because W. Va.Code § 8–12–8 was amended in 1986, the same year Congress passed the COBRA amendments to the PHSA, the legislative intent was to limit the duty of municipalities to provide coverage for spouses and dependents of deceased members to thirty-six months—the maximum the PHSA requires. The Legislature passed the 1986 amendment to W. Va.Code § 8–12–8 on March 8, 1986. 1986 W. Va. Acts 868. COBRA's continuation of coverage amendments to the PHSA were passed by Congress on April 7, 1986. 100 Stat. 82. We cannot attribute to our Legislature an intent to follow a Congressional enactment that did not exist at the time it passed the aforementioned amendment.[12] Consequently, we further hold that the plain language of W. Va. Code § 8–12–8 (1986) (Repl.Vol.1998) requires municipalities, which provide health care coverage to retired municipal employees, to provide continuation coverage to a deceased retired municipal employee's spouse and dependent(s) without temporal limitation. To maintain such continuation coverage, the deceased retired municipal employee's spouse and dependent(s) must pay the premium required therefor.

3. **The plain statutory language of W. Va.Code § 8–12–8 is controlling.** Lastly, the City argues that significant harm will befall municipalities if we affirm the circuit court's ruling. While we appreciate the City's position, we have emphasized that we are not plenipotentiaries in the realm of statutory interpretation. " '[T]he judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along

---

important distinctions between PHSA and ERISA." 217 F.3d at 745.

11. The City's counsel admitted at oral argument that W. Va.Code § 8–12–8 does not contain any time limitations.

12. The City's argument is further foreclosed by our opinion in *State ex rel. City of Wheeling*

*Retirees Association, Inc. v. City of Wheeling*, 185 W.Va. 380, 383, 407 S.E.2d 384, 387 (1991), where we observed that "[t]he 1986 amendment to [W. Va.Code § 8–12–8] specifically addresses the situation of retirees' insurance rates increasing. It is obvious that the intent of the 1986 amendment is to protect retirees from suffering the consequences of rate increases."

suspect lines.' " *State ex rel. Blankenship v. Richardson,* 196 W.Va. 726, 735, 474 S.E.2d 906, 915 (1996) (quoting *Lewis v. Canaan Valley Resorts, Inc.,* 185 W.Va. 684, 692, 408 S.E.2d 634, 642 (1991)). Even in the face of sound policy arguments, " '[i]t is not the province of the courts to make or supervise legislation, and a statute may not, under the guise of interpretation, be modified, revised, amended, distorted, remodeled, or rewritten[.]' " *State v. Richards,* 206 W.Va. 573, 577, 526 S.E.2d 539, 543 (1999) (quoting *State v. General Daniel Morgan Post No. 548,* 144 W.Va. 137, 145, 107 S.E.2d 353, 358 (1959) (citation omitted)). It is only in rare instances that we will negate the meaning of a plain and unambiguous statute,[13] and the City raises none of these exceptions.[14] Indeed, "[w]hile it is unfortunate that the legislature did not foresee the situation now before us, we cannot rewrite the statute so as to provide relief . . . nor can we interpret the statute in a manner inconsistent with the plain meaning of the words." *Van Kirk v. Young,* 180 W.Va. 18, 20, 375 S.E.2d 196, 198 (1988).

### C. Propriety of Mandamus Relief

 The City's argument that mandamus was not an appropriate remedy in this case was based directly upon its assertion that, under federal law, it was not required to accept Ms. Orlofske's premium payments for her continuing health insurance coverage beyond the thirty-six months required by the COBRA amendments to the PHSA. According to the City, because it had no duty to provide coverage, mandamus is unavailable.[15] Contrary to the City's position, we have found that there is no federal preemption.

Thus, in relying on federal law, the City was acting under a misapprehension of the law.

"Mandamus will lie to compel performance of a nondiscretionary duty of an administrative officer . . ., where it appears that the official, under misapprehension of law, refuses to recognize the nature and scope of his duty and proceeds on the belief that he has discretion to do or not to do the thing demanded of him." Syllabus point 4, in part, *Walter v. Ritchie,* 156 W.Va. 98, 191 S.E.2d 275 (1972).

Syl. pt. 6, in part, *Mountaineer Disposal Serv., Inc. v. Dyer,* 156 W.Va. 766, 197 S.E.2d 111 (1973). Because W. Va.Code § 8–12–8 is not preempted and is facially plain, mandamus is available to compel the City to accept Ms. Orlofske's premium payments as long as she continues to properly pay them. *See also Retirees Association,* 185 W.Va. at 384, 407 S.E.2d at 388 (granting mandamus relief under another part of W. Va.Code § 8–12–8).[16]

### IV.

### CONCLUSION

For the foregoing reasons, the decision of the Circuit Court of Ohio County is affirmed.

Affirmed.

---

13. *See, e.g., Frazier,* 193 W.Va. at 24, 454 S.E.2d at 69 ("Although courts should not ordinarily stray beyond the plain language of unambiguous statutes, we recognize the need to depart from the statutory language in exceptional circumstances.").

14. Even if W. Va Code § 8–12–8 was ambiguous, we would still be compelled to find for Ms. Orlofske under *Retirees Association,* 185 W.Va. at 383, 407 S.E.2d at 387, where we held that W. Va.Code § 8–12–8 "is remedial, and should be given a liberal construction."

15. The now classic test for the availability of mandamus is found in Syllabus point 3 of *State*

*ex rel. Kucera v. City of Wheeling,* 153 W.Va. 538, 170 S.E.2d 367 (1969), where we held

[a] writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.

16. Nothing in our opinion should be construed as prohibiting legislative action in this area. The prerogative remains with the Legislature to determine if it wishes to amend W. Va.Code § 8–12–8. *See State Farm Mut. Auto. Ins. v. Norman,* 191 W.Va. 498, 507, 446 S.E.2d 720, 729 (1994).