457 S.E.2d 543

James CASEY and Brenda Hightower, Plaintiffs Below, Appellants,

v.

PUBLIC SERVICE COMMISSION OF WEST VIRGINIA; GTE South, Inc.; and AT & T Communications of West Virginia, a Corporation, Defendants Below, Appellees.

No. 22483.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 18, 1995.

Decided April 14, 1995.

Jeffrey W. Molenda, Appalachian Research and Defense Fund, Inc., Fayetteville, for appellants.

Steven Hamula, Charleston, for appellee, Public Service Com'n.

Mark A. Keffer, Oakton, VA, for appellee, AT & T Communications of W. Va.

Kimberly Caswell, GTE Telephone Services, Tampa, FL, for appellee, GTE South, Inc.

Terry D. Blackwood, Deputy Consumer Advocate, Charleston, for Consumer Advocate Division of the Public Service Com'n of W. Va. amicus curiae.

Joan Wise, Office of the General Counsel, American Ass'n of Retired Persons, Washington, DC, for American Ass'n of Retired Persons, Community Action for Fair Utility Practice (Chicago, IL), Appalachian Peoples' Action Coalition (Athens, OH), Diane Asmus (Hillsboro, OR), Community Educ. and Protection Ass'n (Philadelphia, PA) and Vermont Low–Income Advocacy Council (Montpelier, VT) amicus curiae.

McHUGH, Justice:

The appellants, James Casey and Brenda Hightower, appeal the March 18, 1994 order of the Public Service Commission of West Virginia (hereinafter "the PSC"), which held that the PSC did not have jurisdiction to decide a billing dispute involving interstate telephone calls. The appellees are the Public Service Commission and AT & T Communications of West Virginia. For reasons set forth below, we affirm the order of the PSC.

I

The dispute in the case before us arose after Ms. Hightower's daughter, Shawntawny Hightower, moved in with Ms. Hightower and Mr. Casey. Shawntawny placed third-party calls from the Casey/Hightower residence using telephone numbers her boyfriend had given her; however, the third parties to whom these calls were billed refused to accept responsibility for the calls. Therefore, the calls were rebilled to the Casey/Hightower residence. The appellants contended that since Shawntawny's boyfriend gave her the false telephone numbers, he should be responsible for the telephone bill. Accordingly, on June 1, 1993, the appellants filed a complaint with the PSC against the appellees and GTE South, Incorporated (hereinafter "GTE"), a defendant below.

GTE is a local exchange carrier that bills interstate telephone calls for AT & T and local and intrastate long-distance telephone calls. The dispute involves approximately $1300 for over 150 telephone calls.

GTE removed one of the disputed calls from the bill. Thereafter, GTE asserted that the remaining calls in dispute were AT & T calls and that GTE could not adjust the charges associated with these calls. The Administrative Law Judge agreed with GTE and, therefore, dismissed GTE from the action.

AT & T filed a letter with the PSC on October 18, 1993, stating that it had removed all disputed intrastate calls from the telephone bill. The only disputed calls remaining were interstate calls. Thus, AT & T argued that the PSC lacked jurisdiction to adjudicate the dispute pursuant to the Communications Act of 1934, as amended, which gives the Federal Communications Commission (hereinafter the "FCC") broad preemptive power over interstate wire communications,[1] which includes telephone communication. *See* 47 U.S.C. § 151, *et seq.*

The PSC agreed with AT & T. Consequently, on February 2, 1994, the PSC dismissed the appellants' complaint without prejudice.[2] On March 18, 1994, the PSC denied the appellants' petition for reconsideration. Thereafter, the appellants filed this appeal.

II

The issue before us is whether the PSC has jurisdiction over billing disputes involving interstate telephone calls when the local exchange carrier bills and collects for the interstate calls. The appellants maintain that although the FCC has jurisdiction over

---

**1.** 47 U.S.C. § 153(a) (1988) defines wire communication:

    (a) 'Wire communication' or 'communication by wire' means the transmission of writing, signs, signals, pictures, and sounds of all kinds by aid of wire, cable, or other like connection between the points of origin and reception of such transmission, including all instrumentalities, facilities, apparatus, and services (among other things, the receipt, forwarding, and delivery of communications) incidental to such transmission.

**2.** The powers of the Public Service Commission are outlined in *W.Va.Code,* 24–1–1, *et seq.* More specifically, *W.Va.Code,* 24–2–1 [1991] outlines when the Public Service Commission has jurisdiction: "The jurisdiction of the commission shall extend to all public utilities in this state, and shall include any utility engaged in any of the following public services: ... transmission of messages by telephone[.]" (quoted in relevant part).

the rates charged for interstate calls, the states, and therefore, the PSC, have jurisdiction over interstate billing disputes which serve as the basis for the disconnection of intrastate and interstate telephone services, the imposition of late payment charges, and the demand for deposits to continue or begin intrastate telephone service. Conversely, the appellees contend that the FCC has exclusive jurisdiction over interstate billing disputes since the disputes involve the application and interpretation of AT & T's interstate tariff.

The resolution of this issue involves the interpretation of the Communications Act of 1934. *See* 47 U.S.C. § 151, *et seq.* Specifically, the Communications Act of 1934 gives the FCC broad authority to regulate "interstate and foreign commerce in communication by wire and radio so as to make available … to all the people of the United States a rapid, efficient, Nationwide, and world-wide wire and radio communication service with adequate facilities at reasonable charges[.]" 47 U.S.C. § 151 (1988), in relevant part. Although Congress gave the FCC broad preemptive authority, this authority was not given without limitations: "nothing in this chapter shall be construed to apply or to give the [FCC] jurisdiction with respect to (1) charges, classifications, practices, services, facilities, or regulations for or in connection with intrastate communication service by wire or radio of any carrier[.]" 47 U.S.C. § 152(b) (1988),[3] in pertinent part.

The Communications Act of 1934 attempts to establish a system of dual state and federal regulation by

'divid[ing] the world of telephone regulation neatly into two separate components:' interstate communications, which can be regulated by the FCC; and intrastate communications, which cannot…. However, 'since most aspects of the communications field have overlapping interstate and intrastate components, th[is] … sec-

tion[ ] do[es] not create a simple division; rather, [it] create[s] a persistent jurisdictional tension.'

*Pub. Serv. Comm'n of Maryland v. Fed. Communications Comm'n,* 909 F.2d 1510, 1514 (D.C.Cir.1990) (citing to *Public Util. Comm'n of Texas v. FCC,* 886 F.2d 1325, 1329 (D.C.Cir.1989)). This jurisdictional tension has created an anomaly of decisions by the FCC and the courts as they attempt to define when the FCC has preemptive power over state regulation. *See* Richard McKenna, *Preemption Under the Communications Act,* 37 Fed. Comm. L.J. 1, 6 (1985). Consequently, our analysis of the issue before us is hindered by the confusion which persists in this area. Therefore, a historical background is necessary in order to facilitate an understanding of the FCC's preemptive power.

We are mindful that the Congress or a federal agency acting within the scope of its congressionally delegated authority has the power to preempt state regulation pursuant to the Supremacy Clause of article VI[4] of the *U.S. Const. See generally, Louisiana Pub. Serv. Comm'n v. Fed. Communications Comm'n,* 476 U.S. 355, 368–69, 106 S.Ct. 1890, 1898–99, 90 L.Ed.2d 369, 381–82 (1986) (hereinafter "Louisiana PSC"). The Supreme Court of the United States has provided a useful analysis of preemption pursuant to the Supremacy Clause:

Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, … when there is outright or actual conflict between federal and state law, … where compliance with both federal and state law is in effect physically impossible, … where there is implicit in federal law a barrier to state regulation, … where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal

---

**3.** 47 U.S.C. § 152 was amended in 1989, 1990, 1991 and 1993; however, the amendments do not affect the case before us.

**4.** *U.S. Const.* art. VI, cl. 2 provides, in relevant part:

This Constitution, and the Laws of the United States which shall be made in Pursuance

thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

law, ... or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress. *Id.* (citations omitted). The Supreme Court of the United States further noted "[t]he critical question in any pre-emption analysis is always whether Congress intended that federal regulation supersede state law." *Id.* at 369, 106 S.Ct. at 1899, 90 L.Ed.2d at 382 (citation omitted). It is this question which has proved most troublesome for courts due to the evolution of the telephone industry. *See generally* Michael J. Zpevak, *FCC Preemption After Louisiana PSC*, 45 Fed. Comm.L.J. 185, 187 (1993) (§§ 151 and 152(b) of the Communications Act of 1934 "have remained virtually unchanged since their adoption in 1934, however there has been a definite evolution in terms of the judicial translation of these sections over the years.")

Since the 1960's the telephone industry has undergone a major transformation. *See* McKenna, *supra* at 2. Preemption by the FCC has played a significant role in bringing about the extraordinary changes. *Id.* The FCC's jurisdiction over the telephone industry was not seriously questioned in the courts until the following two events occurred: (1) the FCC imposed regulation on the cable television industry in order to "protect the public interest in relation to broadcasting" and "in order to bring cable television service itself in line with statutory objectives[ ]" and (2) the FCC opened "the domestic telephone industry to competition ... [in order] to clear away obstacles at the state level." *Id.* at 2–3.

The cases which followed the above two events created a legal test for determining when the FCC may preempt a state's authority pursuant to the Communications Act of 1934: "section 152(b) [the section prohibiting the FCC from preempting matters or services used for or in connection with intrastate communication] barred FCC preemption *only* when (1) the matter to be regulated was purely intrastate in nature, *and* (2) federal objectives were not affected adversely by the state regulation in question." Zpevak, *supra* at 192 (emphasis provided). However, in 1986 the Supreme Court of the United States changed the preemption analysis in a landmark decision: *Louisiana PSC, supra.*

In *Louisiana PSC* the issue was whether the FCC had authority to preempt state regulation regarding depreciation practices and charges relating to the setting of rates for intrastate telephone service. The respondents, twenty-six private telephone companies, argued that the FCC should be able to preempt state regulation regarding depreciation practices since the state regulation would frustrate the federal policy of increasing competition in the industry. On the other hand, the petitioners, which were the public service commissions of twenty-three states, maintained that 47 U.S.C. § 152(b) (1988), which denies the FCC jurisdiction over "charges, classifications, practices, services, facilities, or regulations for or in connection with intrastate communication service," precluded the FCC from regulating intrastate depreciation practices.

The Supreme Court of the United States recognized that numerous court decisions had held that "§ 152(b) applies as a jurisdictional bar to FCC pre-emptive action only when two factors are present; first, when the matter to be regulated is purely local and second, when interstate communication is not affected by the state regulation which the FCC would seek to pre-empt." *Id.* at 374, 106 S.Ct. at 1901, 90 L.Ed.2d at 385. However, the Supreme Court of the United States concluded that the above analysis "misrepresents the statutory scheme and the basis and test for pre-emption." *Id.* After all, as the Court noted, 47 U.S.C. § 152(b) (1988) "[b]y its terms, ... fences off from FCC reach or regulation intrastate matters—indeed, including matters 'in connection with' intrastate service." *Id.* at 370, 106 S.Ct. at 1899, 90 L.Ed.2d at 382–83.

The Supreme Court of the United States went on to state that it could not "accept respondents' argument that § 152(b) does not control because the plant involved in this case is used interchangeably to provide both interstate and intrastate service," nor could it accept the argument that the state commissions' authority over intrastate communication "should be 'confined to intrastate matters which are "separable from and do not

substantially affect" interstate communication.'" *Id.* at 373, 106 S.Ct. at 1901, 90 L.Ed.2d at 384–85 (citation omitted).

■ The Court in *Louisiana PSC* went on to hold that since it was possible to separate what portion of an asset was used to deliver or produce interstate service as opposed to intrastate service in a plant which is used interchangeably to provide both interstate and intrastate service, the FCC was barred from preempting state regulation over the depreciation method to be used on the portion of the asset used for intrastate service. Thus, even if the subject matter is both interstate and intrastate, the FCC is barred, pursuant to 47 U.S.C. § 152(b) (1988), from preempting state regulation of the subject matter if there is a way to separate the interstate component from the intrastate component.

As background, we note that billing and collection services are generally performed by entities known as local exchange carriers (hereinafter "LECs") which bill for both intrastate and interstate calls simultaneously. In the case before us, the PSC points out there clearly is a way to separate the interstate and intrastate portions of a telephone bill, even though the LEC bills customers for intrastate and interstate calls simultaneously. Accordingly, the PSC argues pursuant to *Louisiana PSC,* it is barred from regulating interstate billing disputes just as the FCC is barred from regulating intrastate billing disputes.

The appellants, as we previously stated, argue that since the resolution of the interstate billing dispute could result in the disconnection of their local telephone service, the PSC should retain jurisdiction of the interstate billing dispute since the use of the disconnection service for nonpayment of an interstate telephone bill is a matter which is "'in connection with' intrastate service." *Louisiana PSC,* 476 U.S. at 370, 106 S.Ct. at 1899, 90 L.Ed.2d at 382–83. We find the appellants' contention to be misplaced, although we acknowledge that due to the evolving nature of wire communication the preemptive power of the FCC is less than clear.

The FCC has taken the following position regarding the disconnection for nonpayment issue:

[I]t is our view that we have the authority to preempt state regulation of the terms and conditions under which [disconnection for nonpayment] will be allowed to take place, as distinguished from the charges applied to it, on the ground that it is 'not possible to separate the interstate and the intrastate components of the asserted FCC regulation.' *Instead of exerting our preemptive power to the fullest extent of our jurisdiction,* however, *we have, in the Detariffing Order, deferred to the states, allowing them to decide whether and under what circumstance LECs will be allowed to offer [disconnection for nonpayment] service to interstate carriers.*

*In re Public Service Comm'n of Maryland,* 4 F.C.C. R. No. 10, 4000, 4006 (1989) (footnote omitted and emphasis added).

First, the FCC asserts that it has jurisdiction to determine under what conditions the disconnection for nonpayment service will be allowed to occur because it is "'not possible to separate the interstate and the intrastate components of the asserted FCC regulation.'" *Id.* The record in the case before us fails to demonstrate that it is possible to separate the interstate and intrastate components of the disconnection for nonpayment service. Accordingly, we shall rely upon the technical knowledge of the FCC and PSC in determining that it is not possible to separate the interstate and intrastate components of disconnection for nonpayment. After all, as one court noted when discussing the jurisdiction of the FCC, courts defer to the administrative agency when "the disputed issue 'involves technical questions of fact uniquely within the expertise and experience of an agency.'" *Barnstone v. University of Houston, KUHT–TV,* 514 F.Supp. 670, 677 (S.D.Tex.1980), *judgment reversed on other grounds,* 660 F.2d 137 (5th Cir.1981), *reh'g granted by Muir v. Alabama Educational Television Comm'n,* 662 F.2d 1110 (5th Cir. 1981), *and on reh'g,* 688 F.2d 1033 (5th Cir. 1982), *cert. denied, Barnstone v. University of Houston, KUHT–TV,* 460 U.S. 1023, 103 S.Ct. 1274, 75 L.Ed.2d 495 (1983) (quoting

*Nader v. Allegheny Airlines, Inc.,* 426 U.S. 290, 304, 96 S.Ct. 1978, 1987, 48 L.Ed.2d 643, 655 (1976)). *See also Black Citizens for a Fair Media v. F.C.C.,* 719 F.2d 407, 418 (D.C.Cir.1983), *cert. denied,* 467 U.S. 1255, 104 S.Ct. 3545, 82 L.Ed.2d 848 (1984) ("[C]ourt[s] 'defer[ ] ... to the expertise and experience of the [FCC] within its field of specialty[.]'" (citation omitted)); *Metropolitan Cleaning Corp., Inc. v. Crawley,* 14 Va. App. 261, 416 S.E.2d 35, 38 (1992) (quoting *Dunton v. Eastern Fine Paper Co.,* 423 A.2d 512, 514 (Me.1980) (An administrative agency "'acquires an expertise and accumulates an experience in [its] limited, specialized field often more extensive than that of the judiciary.'"). *Cf.* syl. pt. 1, in part, *Monongahela Power Co. v. Public Service Commission,* 166 W.Va. 423, 276 S.E.2d 179 (1981) (In administrative appeals involving complex economic or scientific data which require expert knowledge "beyond the peculiar competence of courts" this Court will not determine whether an agency's decision is contrary to the law and evidence unless the agency has presented an order making findings of fact and conclusions of law which explains the complex economic or scientific data.)

Second, the FCC has deferred to the states the decision of whether and under what conditions LECs will be allowed to offer disconnection for nonpayment service to interstate carriers.[5] However, as no party disputes, the FCC currently has a procedure in place by which it resolves disputed interstate telephone bills. Whether the forum provided by the FCC for the resolution of a disputed interstate telephone bill is convenient is not the issue to be decided by this Court.

■ The United States Code authorizes the FCC to resolve disputes involving interstate wire communication. 47 U.S.C. § 201(b) (1988) states, in relevant part, that "[a]ll charges, practices, classifications, and regulations for and in connection with ... communication service, shall be just and reasonable, and any such charge, practice, clas-

sification, or regulation that is unjust or unreasonable is declared to be unlawful[.]" Furthermore, 47 U.S.C. § 208(a) (1988) states, in pertinent part, that

> [a]ny person ... complaining of anything done or omitted to be done by any common carrier subject to this chapter, in contravention of the provisions thereof, may apply to said [FCC] by petition ... [.] [I]t shall be the duty of the [FCC] to investigate the matter complained of in such manner and by such means as it shall deem proper....

Therefore, if a customer does not find a charge or practice of an interstate telephone company to be proper as to an interstate telephone call, he or she may file a petition with the FCC.[6] Accordingly, the record before us does not indicate that the FCC intended to defer jurisdiction of an interstate billing dispute to the states as a condition for disconnection for nonpayment, nor does the record before us indicate that the FCC does not have authority to resolve such disputes. Thus, based on the limited record in the case before us, we conclude the Communications Act of 1934 preempts state jurisdiction over interstate telephone billing disputes since preemption is not barred by 47 U.S.C. § 152(b) (1988).

■ This Court held the following in syllabus point 2 of *Broadmoor/Timberline Apartments v. Public Service Commission,* 180 W.Va. 387, 376 S.E.2d 593 (1988) based on *W.Va.Code,* 24–1–1, *et seq.,* which sets forth the power and authority of the Commission:

> 'The public service commission has the statutory power and authority to control the facilities, charges and services of all public utilities and to hear and determine the complaints of persons entitled to the services which such utilities afford; and the only limitation upon such power and authority is that the requirements shall not be contrary to law and that they shall be

---

5. The West Virginia Public Service Commission entered an order in 1985 stating that the LEC could disconnect service for the nonpayment of interstate telephone calls. *Lawrence v. Chesapeake and Potomac Telephone Co. of West Virginia,* 69 P.U.R. 4th 665 (1985).

6. A procedure by which the FCC resolves informal and formal complaints involving common carrier is set forth in Practice and Procedure, 47 C.F.R. § 1.701, *et seq.*

just and fair, just and reasonable, and just and proper.' Syllabus Point 6, *State ex rel. City of Wheeling v. Renick,* 145 W.Va. 640, 116 S.E.2d 763 (1960).

Additionally, this Court held: "The Public Service Commission of West Virginia has no jurisdiction and no power or authority except as conferred on it by statute and necessary implications therefrom, and its power is confined to the regulation of public utilities. It has no inherent power or authority." Syl. pt. 2, *Wilhite v. Public Service Commission,* 150 W.Va. 747, 149 S.E.2d 273 (1966).

Because the Communications Act of 1934 gives the FCC broad preemptive power to regulate interstate wire communication, the PSC has no authority to retain jurisdiction over an interstate billing dispute. We recognize that the issue before us is difficult to resolve because the relationship between the FCC and PSC is still evolving. However, this Court cannot predict this evolution because of the rapidly changing technical aspects of wire communication. Therefore, we must necessarily defer to the agencies' determination of how best to resolve an interstate telephone billing dispute. We are not unmindful that there is a burden on the appellants to have the dispute resolved by the FCC; however, the appellants are not without a remedy. Moreover, until the intrastate telephone calls were deleted from the appellants' telephone bill, the PSC was actively involved in resolving the intrastate telephone billing dispute.

Accordingly, we hold that where a billing dispute arises between an interstate telephone company and a customer concerning interstate telephone calls, which interstate calls are regulated by the Federal Communications Commission, and the Federal Communications Commission has an on-going procedure for the resolution of such disputes, the Communications Act of 1934, set forth in 47 U.S.C. § 151, *et seq.,* preempts the jurisdiction of the Public Service Commission of West Virginia to resolve such interstate telephone billing disputes, even though the Federal Communications Commission deferred to the states the determination of whether and under what circumstances local exchange carriers will be allowed to offer disconnection for nonpayment services to the interstate telephone company. Therefore, we affirm the March 18, 1994 order of the PSC.

Affirmed.

BROTHERTON, J., did not participate.

FOX, J., sitting by temporary assignment.