473 S.E.2d 141

**CITY OF KENOVA, a Municipal Corporation, Plaintiff Below, Appellee,**

v.

**BELL ATLANTIC–WEST VIRGINIA, INC., and Citizens Telecommunications Co., Defendants Below, Appellees,**

**County Commission Of Wayne County, Defendant Below, Appellant.**

No. 23087.

Supreme Court of Appeals of West Virginia.

Submitted April 30, 1996.

Decided June 14, 1996.

John F. Cyrus, Gardner & Cyrus, Huntington, Thomas M. Plymale, Wayne, for County Commission of Wayne County.

George B. Morrone, III, Kenova, for City of Kenova.

Jendonnae L. Houdyschell, Assistant City Attorney, Huntington, for City of Huntington Consolidated Communications Emergency Response Center Intervenor.

McHUGH, Chief Justice.

In this appeal, the Wayne County Commission appeals two orders entered in the Circuit Court of Wayne County. In the first order, entered November 18, 1994, the circuit court denied the Wayne County Commission's motion to dismiss this action on the ground that the circuit court lacked subject matter jurisdiction. In the second order, entered July 27, 1995, the circuit court granted the City of Kenova's motion for injunctive relief, enjoining the Wayne County Commission from implementing the "Enhanced 911 County Ordinance" it previously adopted because the enhanced emergency telephone system failed to include all of Wayne County, as required by statute. This Court has before it the petition for appeal, all matters of record and the briefs and arguments of counsel. For the reasons stated below, the orders of the circuit court are affirmed.

I.

On September 6, 1994, the Wayne County Commission (hereinafter "Commission") enacted an "Enhanced 911 County Ordinance" [1] providing for an enhanced emergency telephone system [2] for Wayne County, West Vir-

---

1. The face of the ordinance indicates that prior to adoption of the final plan, the Commission held a public meeting on the proposed enhanced emergency telephone system and placed an advertisement in a newspaper of general circulation in the county notifying the public of the date, time, place and purpose of such meeting and of the location where a copy of the proposed plan could be examined. *See W.Va.Code,* 24–6–6(a) [1986].

2. An "enhanced emergency telephone system," sometimes referred to as an "enhanced 911 system" or "E–911," is defined in *W.Va.Code,* 24–6–2(5) [1990] as

   a telephone system which automatically connects the person dialing the primary emergen-

cy number to the county answering point and in which the telephone network system automatically provides to personnel receiving the call, immediately on answering the call, information on the location and the telephone number from which the call is being made, and upon direction from the personnel receiving the call routes or dispatches such call by telephone, radio or any other appropriate means of communication to emergency service providers that serve the location from which the call is made.

   An "emergency telephone system," on the other hand, sometimes referred to as a "regular 911 system," is defined in *W.Va.Code,* 24–6–2(4) [1990] as

ginia, pursuant to the authority granted it by *W.Va.Code,* 7–1–3cc [1986].[3] Section 2 of the ordinance, entitled "Territory Included in System," provides:

(a) All territory in the county, including every municipal corporation in the county, which is served by telephone company central office equipment that will permit an enhanced emergency telephone system to be established, is to be included in the system.

(b) The municipal corporations included in the system shall include, but not necessarily be limited to, the following: Kenova, Ceredo, Wayne, and Fort Gay.

(c) The territory(ies) which are not served by telephone company central office equipment that will permit an enhanced emergency telephone system to be established are as follows: Part of Westmor[e]land which is within the City limits of Huntington.

(d) The territory described in subsection (c) is not proposed to be included in the enhanced emergency telephone system.[4]

(footnote added).

The ordinance further imposed a fee of $2.00 per month per local exchange service line or line equivalent, to finance the projected costs of the enhanced emergency telephone system.[5] *See* 7–1–3cc(b) [1986], *supra.*

---

3. a telephone system which through normal telephone service facilities automatically connects a person dialing the primary emergency telephone number to an established public agency answering point, but does not include an enhanced emergency telephone system.

3. *W.Va.Code,* 7–1–3cc [1986] provides, in relevant part:

(a) In addition to possessing the authority to establish an emergency telephone system pursuant to [§ 24–6–4], a county commission or the county commissions of two or more counties may, instead, establish an enhanced emergency telephone system or convert an existing system to an enhanced emergency system. The establishment of such a system shall be subject to the provisions of [§ 24–6–1 et seq.][.]

(b) A county commission may impose a fee upon consumers of local exchange service within that county for an enhanced emergency telephone system. Such fee shall be utilized solely for the capital, installation and maintenance costs of the enhanced emergency telephone system.

According to the City of Kenova's "Verified Complaint for Injunctive Relief," filed October 27, 1994, the Commission had convened a hearing on July 11, 1994 to discuss the City of Kenova's concerns regarding the proposed implementation of the enhanced emergency telephone system. At that hearing, the City of Kenova, which is located in Wayne County and which, under the terms of the ordinance, was to be included in the proposed enhanced emergency telephone system, expressed the *following objections* and concerns:

that the [enhanced emergency telephone system] may infringe upon Kenova's rights as a municipality to establish, control, and regulate the emergency services and law enforcement services which it provides to its residents and inhabitants;

that the creation of a 'middleman dispatch system' may result in unnecessary delays in rendering assistance to the residents and inhabitants of Kenova, in that making emergency calls requiring assistance by the Kenova Police Department would be transmitted from Kenova to the [enhanced emergency telephone system] and then back to Kenova, as opposed to directly to Kenova;

Kenova residents may be required to pay for services from which they would not benefit;

(c) A county commission may contract with the telephone company or companies providing local exchange service within the county for such telephone company or companies to act as the billing agent or agents of the county commission[.]

4. The City of Huntington is located in both Cabell and Wayne Counties. That portion of Huntington located in Wayne County, known as the Westmoreland area, has been included in the Cabell County/City of Huntington Enhanced 911 System for several years now. It is for this reason that the Westmoreland area of Huntington, though located in Wayne County, is expressly excluded from the Wayne County Enhanced 911 System.

5. According to the parties, although the proposed system was not expected to become operational until approximately one year after the Commission adopted the final plan, imposition of the $2.00 line charge began November 1, 1994.

a cost of service study should be conducted to determine whether the users of the [enhanced emergency telephone system] are bearing a proportionate share of the costs associated with receiving the service; that feasibility studies regarding the location and staffing of the facility may not have been fully investigated and evaluated; that the implementation of an [enhanced emergency telephone system] may impose duties upon Kenova which create additional liabilities, pursuant to the 'special duty doctrine.'

In its "Verified Complaint for Injunctive Relief," [6] the City of Kenova sought to enjoin the Commission, Bell Atlantic–West Virginia, Inc. and Citizens Telecommunications Co. from implementing the enhanced emergency telephone system and the $2.00 line charge. A hearing on the City of Kenova's motions, as well as on the Commission's motion to dismiss this action on the grounds that the circuit court lacked subject matter jurisdiction, was conducted on November 7, 1994. By order entered November 18, 1994, the circuit court denied the Commission's motion to dismiss,[7] granted the City of Huntington's motion to intervene [8] and scheduled a hearing on the City of Kenova's motion for injunctive relief.

Upon determining that the Enhanced 911 County Ordinance violated the territorial requirements of *W. Va. Code*, 24–6–5 [1989], the circuit court, by order dated July 27, 1995,[9]

enjoined the Commission from implementing it. The circuit court stated, *inter alia*:

West Virginia Code Chapter 24–6–5 states in pertinent part as follows: (a) An enhanced emergency telephone system, at a minimum, shall provide that: '(1) All the territory in the County, including every municipal corporation in the County, which is served by telephone company central office equipment that will permit such a system be established shall be included in the system.' It is conceded by both the City and the County that the system which the Wayne County Commission has implemented does not comply with this statute in that the City of Huntington is excluded from the Wayne County system.

Any attempt by this Court to determine why the legislature saw fit to place the stated requirement on commissions seeking to implement enhanced systems and not on implementation of the regular 911 system would require speculation.

The statute is clear and unambiguous and in the event the legislature intended other than what they enacted they can very easily amend the statute at their next session.

## II.

The first issue on appeal is whether the circuit court properly exercised subject matter jurisdiction in this case. The Commis-

---

**6.** The City of Kenova also filed a motion for temporary restraining order, which motion was subsequently denied.

**7.** On December 14, 1994, the Commission filed a petition for writ of prohibition with this Court seeking to prohibit the Circuit Court of Wayne County from exercising subject matter jurisdiction in this case. The Commission's petition was refused on December 15, 1994.

**8.** *See W.Va.R.Civ.P.* 24(b). The City of Huntington, which party was subsequently amended to be that City's Consolidated Communications Emergency Center, filed a motion to intervene in this matter because it "has reason to believe that certain findings of fact could have a detrimental impact upon the ... Enhanced E–911 system currently operating and in place in the City of Huntington and serving the Wayne County area."

**9.** A hearing on the City of Kenova's motion for injunctive relief was apparently conducted on

December 19, 1994. However, that hearing was not transcribed and, consequently, is not a part of the record on appeal.

Also on December 19, 1994, the Commission and the City of Huntington entered into a written agreement which provided, *inter alia*:

that the City of Huntington will be solely responsible for providing an Enhanced E–911 system to the Westmoreland area, including all necessary emergency services for implementing the same. It is hereby understood and agreed that the current ... Enhanced 911 system in use in the Westmoreland area is sufficient under the terms of this agreement. Furthermore, the Wayne County Commission agrees not to seek at anytime either now or in the future to have the Westmoreland area included in any new E–911 system without the express written consent of the City of Huntington.

sion contends that it is the Public Service Commission (hereinafter "PSC"), and not the circuit court, which has primary and exclusive jurisdiction where there is a conflict between a county commission and a municipality concerning the adoption and implementation of an enhanced 911 system.

In arguing that the PSC has subject matter jurisdiction in this case, rather than the circuit court, the Commission relies primarily upon the language of *W.Va.Code,* 24–6–7 [1989], entitled "Resolution of conflicts," and *W.Va.Code,* 24–6–1a [1988], entitled "Municipal emergency telephone systems." *W.Va. Code,* 24–6–7 [1989] provides, in pertinent part:

> *In the event that a conflict arises between county commissions,* between telephone companies, between a telephone company or companies and a county commission or commissions, or between the department of public safety and any of the foregoing entities *concerning* an emergency telephone system or systems or *an enhanced emergency telephone system or systems, the public service commission, upon application by such county commission,* telephone company or department of public safety, *shall resolve such conflict.* The resolution of such conflict may include the modification or suspension of any final plan adopted pursuant to [*W.Va.Code,* 24–6–6 or 24–6–6a] [.]

(emphasis added).

*W.Va.Code,* 24–6–1a [1988] provides that the provisions of *W.Va.Code,* 24–6–1, *et seq.,* including the above-quoted *W.Va.Code,* 24–6–7 [1989], are to be applied to municipalities, such as the City of Kenova. *W.Va.Code,* 24–6–1a [1988] states, in relevant part:

> *Where the provisions of [W. Va.Code, 24–6–1, et seq.] refer to the word 'county' or 'counties,' henceforth such references shall be considered to include the word 'municipality' or 'municipalities' with respect to the subject matter therein, except and unless such reference to 'municipality' or 'municipalities' would not have a logical and clear meaning within such context.*

It is the intent of this section to make [*W.Va.Code,* 24–6–1, *et seq.*] equally applicable to counties and municipalities alike

and to allow county commissions and the officials of municipalities to enter into such agreements between them or the telephone company as may be necessary to accomplish the purposes provided for by this article: Provided, That if any county has a system in place, municipalities may not adopt a different system without county approval.

(emphasis added).

As the plain language of *W. Va.Code,* 24–6–7 [1989] indicates, where there is a conflict *between county commissions* concerning an Enhanced 911 system, the PSC shall resolve such conflict. The conflict in this case, however, is not between county commissions but between a county commission and a municipality. The Commission argues that under *W.Va.Code,* 24–6–1a [1988], *supra,* where the term "county" appears in *W. Va.Code,* 24–6–7, [1989], "such references shall be considered to include the word 'municipality[.]' " We point out, however, that references to the word "county" shall only include the word "municipality" "*except and unless such reference to 'municipality' ... would not have a logical and clear meaning in such context.*" *W.Va.Code,* 24–6–1a [1988] (emphasis added). Clearly, to include "municipality" where the word "county" appears in the phrase "county commission" would not have a logical and clear meaning within the context of *W.Va. Code,* 24–6–7 [1989], *supra.*

■ This Court has held that the PSC's jurisdiction is exclusively that which has been authorized by statute:

> 'The Public Service Commission has no jurisdiction and no power or authority except as conferred on it by statute and necessary implications therefrom, and its power is confined to the regulation of public utilities. It has no inherent power or authority.' Syl. pt. 2, *Wilhite v. Public Serv. Comm'n,* 150 W.Va. 747, 149 S.E.2d 273 (1966).

Syl. pt. 2, *Casey v. Public Serv. Comm'n,* 193 W.Va. 606, 457 S.E.2d 543 (1995).

■ In the event that a conflict arises between county commissions, between telephone companies, between a telephone com-

pany or companies and a county commission or commissions, or between the department of public safety and any of the foregoing entities concerning an emergency telephone system or systems or an enhanced emergency telephone system or systems, the public service commission, upon application by such county commission, telephone company, or department of public safety, shall resolve such conflict, pursuant to *W.Va.Code,* 24–6–7 [1989]. However, neither *W.Va.Code,* 24–6–7 [1989] nor *W.Va.Code,* 24–6–1a [1988] authorizes the public service commission to resolve conflicts which arise between a county commission and a municipality concerning an emergency telephone system or systems or an enhanced emergency telephone system or systems.

Accordingly, in that the PSC is not authorized to resolve the conflict between the Wayne County Commission and the City of Kenova concerning the Wayne County enhanced 911 system, the circuit court properly exercised subject matter jurisdiction in this case. *See W. Va. Const.,* art. VIII, § 6 (general jurisdiction of circuit courts); *W. Va.Code,* 51–2–2 [1978]. *See also W.Va.Code,* 53–5–4 [1923] (general jurisdiction of circuit judge to award injunction).

### III.

Having concluded that the circuit court has subject matter jurisdiction over the conflict between the Commission and the City of Kenova, the remaining issue for our review is whether the circuit court properly enjoined the implementation of the Enhanced 911 County Ordinance because it violated *W. Va. Code,* 24–6–5 [1989]. *W. Va.Code,* 24–6–5 [1989] provides, in relevant part:

(a) An enhanced emergency telephone system, at a minimum shall provide, that:

(1) *All the territory in the county,* including every municipal corporation in the county, which is served by telephone company central office equipment that will per-

mit such a system to be established *shall be included in the system[.]*

(emphasis added).

It is undisputed that the enhanced 911 system at issue does not include "[a]ll the territory in the county[,]" *W. Va.Code,* 24–6–5 [1989], because the Westmoreland area of the City of Huntington, though situated in Wayne County, is already included in the Cabell County/City of Huntington Enhanced 911 System. The Westmoreland area was, therefore, excluded from Wayne County's enhanced 911 system. *See* n. 4, *supra.* It is the Commission's primary contention that to include Westmoreland in the Wayne County enhanced 911 system would result in increased costs to Westmoreland residents, as they would be required to pay for two systems.[10]

The Commission also argues that, although it failed to follow the express language of *W.Va.Code,* 24–6–5 [1989] when it excluded Westmoreland from the Wayne County enhanced 911 system, it, nevertheless, adhered to the Legislature's intention to more effectively provide emergency aid:

The Legislature hereby finds and declares that it is in the public interest to shorten the time required for a citizen to request and receive emergency aid.... Provision of a single, primary emergency number through which emergency services can be quickly and efficiently obtained will provide a significant contribution to law enforcement and other public service efforts.... It is the purpose of this article to establish a primary emergency telephone number for use in this state and to encourage units of local government and combinations of units of local government to develop and improve emergency communication procedures and facilities in a manner that will allow a quick response to any person calling the primary emergency telephone number seeking police, fire, medical, rescue and other emergency services.

10. The City of Huntington's Consolidated Communications Emergency Response Center, an intervenor in this case, points out that rescue units from Cabell County, and not Wayne County, pro- vide emergency services to Westmoreland residents. Westmoreland residents would thus be required to pay for emergency services from which they would not benefit.

*W.Va.Code,* 24–6–1 [1979], in relevant part. *See* syl. pt. 2, *Francis O. Day Co. v. Director, D.E.P.,* 191 W.Va. 134, 443 S.E.2d 602 (1994) ("' " "The primary object in construing a statute is to ascertain and give effect to the intent of the legislature.' Syl. pt. 1, *Smith v. State Workmen's Compensation Com'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975)." Syl. Pt. 2, *State ex rel. Fetters v. Hott,* 173 W.Va. 502, 318 S.E.2d 446 (1984).' Syllabus point 2, *Lee v. West Virginia Teachers Retirement Bd.,* 186 W.Va. 441, 413 S.E.2d 96 (1991)").

Unlike Westmoreland, there were areas of Wayne County which were previously unserved by an enhanced 911 system. The Wayne County system was thus proposed for the benefit of those unserved areas. As a result, according to the Commission, the legislature's intention that the citizens of this State be provided with primary emergency numbers by which they can more efficiently obtain emergency services is fulfilled in this case.[11] *See W.Va.Code,* 24–6–1 [1979], *supra.*

As further evidence of the legislature's intent regarding enhanced 911 systems, the Commission argues that, notwithstanding the express language of *W.Va.Code,* 24–6–5 [1989] requiring *all* the territory in the county to be included in such a system, the legislature did, in fact, contemplate instances such as the present one, where some portions of a county might not be included in an enhanced 911 system. Specifically, *W. Va. Code,* 24–6–6a(a) [1989] authorizes the department of public safety to prepare a proposal on the implementation of an enhanced 911 system "[i]n any county or counties which have areas thereof not receiving service from an enhanced emergency services telephone system[.]" *Id.,* in relevant part.

The Commission maintains, therefore, that to literally construe *W. Va.Code,* 24–6–5 in this case—that is, to require that *all* of Wayne County be included in the enhanced 911 system even though part of the county is already included in another county's system—would lead to an absurd result and would defy common sense. *See* syl. pt. 2, *Pristavec v. Westfield Ins. Co.,* 184 W.Va. 331, 400 S.E.2d 575 (1990) (" 'It is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity.' Syl. pt. 2, *Click v. Click,* 98 W.Va. 419, 127 S.E. 194 (1925)").

■ In contrast, the City of Kenova argues, and the circuit court agreed, that *W.Va.Code,* 24–6–5 [1989] clearly and unambiguously states that "[a]n enhanced emergency telephone system, at a minimum, shall provide that: (1)[a]ll the territory in the county . . . shall be included in the system[.]" Accordingly, the plain language of *W.Va. Code,* 24–6–5 [1989] should be applied:

'When a statute is clear and unambiguous and legislative intent is plain the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute.' Syl. pt. 1, *Cummins v. State Workmen's Compensation Comm'r,* 152 W.Va. 781, 166 S.E.2d 562 (1969).

Syl. pt. 3, *Kosegi v. Pugliese,* 185 W.Va. 384, 407 S.E.2d 388 (1991). *See* syl. pt. 1, *State ex rel. Estes v. Egnor,* 191 W.Va. 36, 443 S.E.2d 193 (1994).

In support of its argument that the legislature's intent regarding the territory to be included in a county's enhanced 911 system is clear from the language of *W.Va.Code,* 24–6–5 [1989], the City of Kenova refers to the language of *W. Va.Code,* 24–6–4 [1989], regarding the creation of "regular" emergency telephone systems. *See* n. 2, *supra. W. Va.Code,* 24–6–4 [1989] provides, in relevant part:

---

11. The Commission points out that the adopted plan for the enhanced 911 system at issue was forwarded to and approved by the PSC, as required by *W.Va.Code,* 24–6–6(c) [1986]. ("Upon completion and adoption of the plan by the commission, it shall send a copy of the plan to the [PSC], who shall file such plan and ensure that its provisions are complied with." *Id.,* in relevant part.) The PSC's expertise in the area of enhanced 911 systems is recognized in *W.Va. Code,* 24–6–3 [1990]("(a) The [PSC] shall develop, adopt and periodically review a comprehensive plan establishing the technical and operational standards to be followed in establishing and maintaining . . . enhanced emergency telephone systems." *Id.,* in relevant part.)

(a) Upon the adoption by the [PSC] of a comprehensive plan, the public agency may establish, consistent with the comprehensive plan, an *emergency telephone system* within its respective jurisdiction. *Nothing herein contained, however, shall be construed to prohibit or discourage in any way the establishment of multijurisdiction or regional systems, and any emergency telephone system* established pursuant to this article *may include the territory of more than one public agency,*[12] *or may include only a portion of the territory of a public agency.*

(emphasis and footnote added).

Indeed, throughout *W.Va.Code,* 24–6–1, *et seq.,* regular and enhanced 911 systems are substantively addressed in separate provisions. *See W.Va.Code,* 24–6–2(4) and (5) [1990] (defining "[regular] emergency telephone system" and "enhanced emergency telephone system");[13] *W. Va.Code,* 24–6–4 [1989] ("creation of [regular] emergency telephone systems"); *W. Va.Code,* 24–6–5 [1989] ("enhanced emergency telephone system requirements"). In the above-quoted *W.Va. Code,* 24–6–4 [1989], the legislature, in clear and express terms, provided for the possibility of multijurisdictional or regional systems and for the inclusion of the territory of more than one public agency or only a portion of the territory of a public agency, in the creation of *regular* 911 systems. However, similar express language is noticeably absent in the statutory requirements for *enhanced* 911 systems. *See W. Va.Code,* 24–6–5 [1989], *supra.* In fact, in *W.Va.Code,* 24–6–5 [1989], the legislature, in requiring that *enhanced* 911 systems include all the territory of the county, employed language which unquestionably contrasts with the provision that *regular* 911 systems may include only a portion of the territory of a public agency. *See W. Va.Code,* 24–6–4 [1989], *supra.*

Upon review of the entire statutory scheme for local emergency telephone systems, *W.Va.Code,* 24–6–1, *et seq.,* this Court, admittedly, has been unable to determine the legislature's motives for the territorial incongruities discussed above. Nevertheless, whatever the legislature's rationale, this Court has recognized that it "may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *Tony P. Sellitti Const. Co. v. Caryl,* 185 W.Va. 584, 593, 408 S.E.2d 336, 345 (1991), *cert. denied,* 502 U.S. 1073, 112 S.Ct. 969, 117 L.Ed.2d 135 (1992) (*quoting City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511, 517 (1976)).

■ We hold that under the plain language of *W.Va.Code,* 24–6–5 [1989], an enhanced emergency telephone system, at a minimum, shall provide, *inter alia,* that all the territory in the county, including every municipal corporation in the county, which is served by telephone company central office equipment that will permit such a system to be established shall be included in the system. Applying the clear and unambiguous language of the statute to this case, we conclude that it was not error for the circuit court to enjoin the implementation of the Enhanced 911 County Ordinance enacted by the Wayne County Commission on September 6, 1994, as the enhanced 911 system failed to include all of the territory in the county, as required by *W.Va.Code,* 24–6–5 [1989].[14]

### IV.

For the reasons discussed herein, the orders of the Circuit Court of Wayne County are hereby affirmed.

Affirmed.

---

12. The term "public agency" is defined as "the state, and any municipality, county, public district or public authority which provides or has authority to provide firefighting, police, ambulance, medical, rescue or other emergency services." *W.Va.Code,* 24–6–2(6) [1990].

13. *See* n. 2, *supra.*

14. As the circuit court pointed out, the legislature is certainly free to amend *W.Va.Code,* 24–6–5 [1989] should it determine the language presently employed is not what it intended.